corporation I suppose you still have a lot of controversy okay mr. Schaefer we'll hear from you representing Treaty Energy. Tom Schaefer, sole practitioner for 55 years representing Treaty Energy Corporation. The issue in this case is whether a summary judgment was properly issued in the bankruptcy court and affirmed by the district court. It is governed by bankruptcy rule 7056 which this court I'm sure is very familiar with under 56 rules of federal procedure namely that in order to grant a motion for summary judgment there must be no genuine issue of material fact and the movement is entitled to a judgment as a matter of law. In reviewing this case your honor I would suggest that you consider some of the prior cases that were. Why don't we talk about this case. Okay. And that is what is the material issue the material issue of fact. The material issue of fact your honor is if these stock agreement purchases were in fact valid sales under Louisiana law and that's what we're determining under state law that if they were valid sales then we treaty are entitled to an award for compensatory damages. The compensatory damages. Why is that? I mean that that's just the first step to your to your relief you see. I mean that may be the legal step but now what are the factual steps? What have you shown that are facts that actually that will demonstrate that you suffered any kind of to the involuntary bankruptcy. This was conducted as a motion for summary judgment and no documentation was submitted at the hearing. So all that we have is the is a sworn affidavit on behalf of the gentleman Sean Douglas who was in charge of investor relations for treaty. How does that create as I I mean the way I read it it was he said he said nothing that would create a material issue of fact because he did not show how did not connect the causal the damages to involuntary bankruptcy. Well in his affidavit your honor he stated that they were having difficulty in soliciting purchases for their stock after the filing of the chapter seven. Yes your honor. He said I thought he said that he received several calls and he said he did not know he did not make any sales. He was not involved in any sales. He did not know of anything about any sales. All he knew was that the voluntary bankruptcy apparently chilled interest in the stock on the basis that he had gotten some phone calls inquiring about the bankruptcy. And that's all the evidence you have. Well I know but aren't you I believe you're the plaintiff. Yes your honor but you've got to make your case. Well I don't have any evidence they don't have any evidence so it's and help you. It's a sworn affidavit your honor. It's a sworn affidavit that says what? It said that treaty continued to solicit purchases of stock that would be delivered in the fourth quarter 2013. While TECO was previously selling restrictive shares of capital stock at a 40% discount the majority of prospective purchases that were contacted declined because of the additional risk of losing their entire venture. But he said he didn't I mean that's all hearsay I mean does he say he had any knowledge of any of that? What was his knowledge? What was the basis for his statement other than just he heard it? The basis of his statement is that when the offices would generate this sale then they would give him the documentation and he would then enter it in the records of treaty and that went on to this chart that he prepared to detail the loss of sale of contracts with respect to sale. He was in no board meetings he knew nothing about it other than the fact that he had received some phone calls inquiring about the bankruptcy. No I don't think he was receiving calls as the gentleman in charge of investor relations yes and then what he did is he then took the information from the offices that were actually making the contacts and when there was a sale he would then record that information in the records of the of treaty and he from that he formed this this chart showing the loss of value of the sales of stock. So he was involved in these not directly talking to the people but then taking the information from those conversations and entering it into the records of treaty. So he was he knew what the 40% discount was before the filing of the chapter the involuntary petition. He knew what that was and now he's taken the information that was given to him by offices. What was the evidence that they intended to sell at a 40% discount? You mean prior to it? Was there any evidence that they ever intended to sell the stock at a 40% discount before involuntary bankruptcy? They were selling it the stock at the 40% discount. That's what that's what he that's what he stated here. No they had to sell it for less than the 40% in 40% discount in order to to encourage one of these previous investors to invest more money and so that party who was buying stock now in a company that was in bankruptcy court the very few of us that are going to buy stock in a company that's in bankruptcy because you can lose your you most probably will lose your entire investment. I thought the common stock, the unrestricted stock did rise in value during this period of time. The market price that was prepared by Haleem, the chart that he prepared, he has no experience in preparing these charts. They did not gain an expert to prepare the chart. That was just that their own self-serving statement but they claim that the price remained the same but then when you look at that that chart further that right after right after the the court dismissed the case on June 12th the stock the stock the market price on his chart rose up a hundred percent in an eight-day period of time. Why was that stock price even on his chart held the same during the time of the chapter 7 case was pending for five weeks. You have an expert that said that gave any kind of expert testimony that indicated that that was the reason for the stock price stock increase. At the end? At the end after the. No no it's just his own self-serving statement. We don't know whether other factors may have caused it to rise or not? There were no other factors. The other side has has raised no other factors. Do we know that? Explain it. Did you show that there were no other factors and that it only could only be from the dismissal of the involuntary petition? What we have attached to the affidavit of Sean Douglas is a posting on the that the chapter 7 petition involuntary petition was filed on that date. There was definite notice to to the whole world and to all of the investors on investor hub or whatever you want to call these these uh these uh boards. I'm sorry go ahead. Well that's all right your honor. Your honor I ask you to consider the cases prior cases of John versus state of Louisiana which you all which this court stated that they would review the inferences in the record in the light more favorable to the non-moving party. Also in Galindo versus Precision American the district court was obliged to resolve all reasonable factual inferences from the record in favor of the non-movement. Also in Galindo unsupported allegations setting forth conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment. And also in the John case your honor this court stated that if the district court granted a raised questions of fact will require reversal. Your honor with regard to this matter everything was going pretty good so to speak for treaty until this chapter 11 case was filed. What does it take to file an involuntary petition? It requires that you have individuals who state that they number one and this is under the bankruptcy code 303. They have to state that that they have a a claim that is that is not contingent as the liability or the subject of a bona fide dispute as the liability or amount. Yet your honor you have the ringleader in this case David Haleen who prepared the petition sent it out to the other five individuals. He then received it he filed and he paid the filing fee. All of these petitioners your honor signed this under the statement petitioners declare under penalty of perjury that the foregoing is a true and correct according to the best of their knowledge information and belief. Yet Haleen your honor he had been a petitioner in a prior case in bankruptcy court against treaty which was held before Judge Brown and in that case your honor Judge Brown decided that Haleen had no claim whatsoever and any allegations that Haleen made in the petition in that case of fraud they were never proven. Your honor once that petition involuntary petition was filed then we went ahead treaty went ahead and filed a a motion to dismiss it. Consider that perjury is serious it's punishable under USC title 18 section 1621. Yet Judge Brown did not refer this obvious perjury to the U.S. attorney. The filing of an involuntary petition is serious as you just stated it has the effect of chilling the alleged debtor's credit. It reduces its ability to raise capital through the sale of its stock as in this case. It reduces its sources of supply. It scares away customers. It leaves a permanent scar on the business even if it's promptly dismissed. Besides your honor when we had the hearing on the motion to dismiss Haleen was present and here he claims under oath that he has a claim for four hundred and twelve thousand dollars and also that treaty committed fraud. Yet Judge Brown reminded him that he had no claim that his claim was dismissed in a prior case and Haleen did not produce anything for to show fraud. What about the other five petitioners who were in favor of the dismissal of Haleen's claim and the other five petitioners who were in favor of the dismissal of Haleen's claim? What was the difference in sales price of the restricted shares before the filing of the involuntary petition? That's listed in the in the uh. Where it's listed what was it? What was it your honor? And more precisely my understanding is that that you prior to the involuntary petition you were selling at x dollars for restricted shares and that the and that subsequent to the invol while the involuntary petition filing you were also selling at that same level but that what you're claiming is that but for that you could have sold at higher than you did before the filing of petition. Is that correct? The chart your honor on the first sale. Follow me. Is that is it correct that that you prior to the filing of the petition that your you were selling the restricted shares? Yes. Of five cents or whatever it was the number is and that after that you could you you continue to sell at those prices but your problem your claim of injury is that you really had expected to sell those restricted shares at a higher price than you were earlier selling them. That's incorrect your honor. Okay well what is it? Well for the first one it shows that the price was 0.0059 for a share of stock and it was sold. Before the filing or after the filing? That was before the 0.0025 so it was selling for less and and and that's that's that that difference of having to get capital we were selling it for even less than the 40 percent discount which existed prior to the filing. Is that but there's a dispute between you and the defendants about that fact of whether it was selling higher or lower during the pendency of the bankruptcy petition? Well they're claiming that because of the market price remaining the same which is not provided by an expert it's provided by the self-serving statement of of Haleem and it wasn't even under an affidavit and under his program under his charge the price stayed the same during the chapter seven case was pending and then what I'm saying to you is that on the day after the case was is that during that time the market price you're talking about what's that your honor what is the market price you've heard the market price you're you're buying and selling and you're selling at something other than the market price well what is the market price for what for the unrestricted shares? Well I'd have to look at at Haleem's chart your honor but what I'm saying to you and suggesting to you is that there is a difference between a and b who a stockholder selling or buying stock as opposed to to treaty who needs capital infusion to maintain their operations and now they were selling it to get that capital they were getting it for 40 they were selling it for 40 discount but now the doggone chapter involuntary is filed boom now they can't sell it for a 40 discount. Did they ever sell it for 40 discount? Yes your honor. They got that price? Yes your honor. Before the file? Yes your honor that's the way they were raising their capital. Okay thank you very much you've certainly saved some time for rebuttal Mr. Schaffer. Yes your honor. White we'll hear from you. Good morning my name is Victoria White. John Duck and I with the law firm of Adams and Reese represent David Haleem one of the petitioners and appellees in this case. Thomas Gray represents the five remaining petitioner appellees and he's informed me before my argument that he plans to adopt my entire argument today. What happens with this problem of the about price differentials because we're talking about a quote market price and we're talking about which I take it is is to be I'd assume that to be a price that's set by sales effective between outsiders that is that strangers buying and selling the stock as as distinguished from the sales by the issuer. Correct correct your honor um what we did to prove that there was no issue of fact in this case is we took the very chart that Sean Douglas attached to his affidavit which our opinion is that it's inadmissible for many reasons as you pointed out Judge Jolly it contains a lot of hearsay and opinion evidence but we took that chart and we assumed that everything in that chart was true and we analyzed the price on each of the dates set forth in that chart it shows that the price that these these restricted shares were being sold at stayed the same before the petition was filed two facts two facts that Mr. Shaffer made one that it was selling for 40 discount before bankruptcy is that true your honor there was no competent evidence in the record that that was actually the case well you didn't answer my question but I guess so I'm not I don't know if that was true we we assume that that was true for the purpose of our analysis so you assume that they were selling a 40 discount all right and then he says that after the bankruptcy petition was lifted that he was selling that it shot up a double well we're talking about what is your response we're he's talking about two different things there correct the correct the public share price the unrestricted share price increased from the time of the filing of the involuntary petition until after the petition was dismissed and then continued to increase after the dismissal the unrestricted the restricted share price however stayed the same before the petition was filed during the pendency of the petition and after it was filed so your position is that based on his information that they were able to sell the restricted stock at a 40 discount through all relevant periods of this litigation correct judge shally based on the information that sean douglas attached his affidavit their argument for damages is that they as i understood it that they intended to sell it before for 40 discount and were unable to sell it during that entire period at a 40 percent for 40 discount the restricted stock that's their argument but you're saying that the truth is just the very opposite of that correct you're 40 discount before they sold it for 40 discount during the period of bankruptcy was pending and they showed up for 40 percent discount after correct your honor our position is that the fact if the court said about that did this court resolve that no no your honor the district court affirmed judge brown's ruling well i understand that but what what did the court say about the scenario i just outlined that they had a different legal reasons if they dismissed what did they say about the factual scenario that i just laid out the the district court i don't believe addressed the the factual issue that you're laying out what you're explaining is exactly right that's this is our exact argument that there we're taking everything that they put in the chart attached to sean douglas's affidavit as true and just laying out the facts what treaty is trying to do is distort those facts and the only way that they can make a colorable damage claim is to compare the the steady price that the restricted stock was selling at to the market price which is irrelevant it's a manufactured claim on its face well you're saying that they were that the actual amounts that they were able to sell that that was never diminished but in this during a period of time in which the the market shares were steadily increasing so but he so he tends to express this as a loss of a percentage so in other words if he if the stock is selling for for five cents uh the restricted shares at five at five cents and it continues at all times to sell at five cents and he says not he said it dropped up to 2.5 percent so it dropped and if you're but he also expresses the loss as their inability to maintain that same relationship to the market price because the market price is going up and you say well no it stayed the same well first that doesn't that really admits that that there was a differential there well just to clarify what i'm saying is that the restricted sale price stayed the same and that the market price actually increased that's that's what he's saying is that look okay they were they were pegging their restricted sales uh they're anticipating that they had been getting a percentage of the market price the market continued to go up and it's not a claim that the petition frustrated those that market price it is a claim that while this was tending they were they were in it they were unable to sell restricted shares that is they the issuer was unable to sell the shares the market continued to go up i understand your point you said well yeah but you got the same price you always got and they said well not if not if if not if we were if we if we had maintained the same relationship to the increasing market we would have gotten more money i understand your point your honor oh he says that but he also said the second thing he also said it's not true that they was that the price they were getting for the restricted shares stayed at five cents he said they went down okay i'll address that point first your honor that the price did not stay the all we did was take their chart of alleged transactions and put it on a graph so it was easy to see if you look at that chart it demonstrates very well what happened with the stock price for each of those transactions he's referring to just one of those sales after the petition was filed one sale was below immediately after there was one sale to one alleged sale to one investor below that 40 discount or the 0.005 trading price that they had said was their standard price which we argue there was no competent evidence of but there were also several that were sold at more than that at a less than a 40 discount from the market share price so if you average it out and just looking at it if you average it out it all stayed at an average price of 0.005 so that's how we address that argument in the sense that other there was no reason to explain maybe you can explain the differential between the price on the unrestricted and the price on the restricted uh did not move in tandem correct your honor so let's even if we assume that that is a a colorable argument for damages in this case that they deserve the difference between the market price and the restricted sale price that they were selling at even if we assume that is true they don't have competent they didn't come forth with competent evidence to oppose our summary judgment to create a genuine issue of sales even occurred but now as i believe you just told me that the district court nor the bankruptcy court ever addressed these questions about the charts um i mean judge jolly i think you misunderstood me judge brown definitely addressed the issue of the charts and his factual finding which we assert is not clearly erroneous is that the price stayed the same and because the price stayed the same there was no damages sustained by treaty but even if we assume that there was the difference in the stock price from the market price going up is a is a colorable damages claim which we disagree with but even if you assume that treaty didn't come forth and put into the record any evidence competent evidence that the stock was selling at a 40 discount before the petition was filed they didn't put any competent evidence into the record that treaty was actually selling this stock they also didn't put any competent evidence into the record that they received these funds and judge brown addressed that and so held what you're representing he held that the that the they had not met their burden of proof correct your honor um what what does that how does that translate to the charts i mean the judges ruling how does that translate to the charts i can give you um judge brown's ruling yes your honor i can tell you exactly what judge brown said at the hearing um basically it boils down to me that plaintiff does not have proof of a loss for the sale that didn't occur the simple facts are that there was nothing to be sold by treaty and he mistakenly calls it treaty petroleum it's actually treaty energy he corrects himself later and i emphasize treaty petroleum and not some subsidiary there's nothing for sale because they had already sold all of the authorized shares and until the state of nevada authorized the issuance of more shares there was nothing to sell so there could not be a sale as such and but and let me go on i just didn't want to cut off his argument um and even if there was something to sell there was no loss in the price because the price stayed basically the same a half of a half of one percent point five tenths a half of one cent and for those reasons i'm going to grant the motion for partial summary judgment so he did make a fine a factual finding that because the price stayed the same there was no colorable damage claim to be had by treaty they put on no evidence that would create a disputed issue of fact that that the stock should have risen in tandem with the rise of the public offering stock or the restrict the unrestricted stock no evidence of that no your honor no the only evidence the planning put in to support its case was the one affidavit correct your honor correct they put in the one affidavit which judge brown also recognized contained hearsay evidence and opinion testimony that he couldn't consider it what do you say about the argument that this was someone in a position who received all the documentation regarding these sales or the failure of sales that would have qualified him to testify to the contents of that affidavit well your honor i would say number one that he had no personal knowledge of these sales at all and he admits that he did that personal knowledge if he established himself as one who received it in the ordinary course of business well your honor even if he was one that received in the ordinary course of business it's an improper compilation and he did not put the supporting information with his compilation so for that reason it was inadmissible and not to be considered by judge brown but even taking it as true he does even if we take that chart as true it doesn't that chart doesn't say that treaty was the seller that chart doesn't say that there was a 40 discount that they were selling at from the market price before the involuntary petition was filed that chart doesn't say who the buyers were it doesn't say that the price was actually paid so he didn't meet his burden of proof treaty had the burden to show that there was a genuine issue something that would warrant a trial and that a reasonable jury would find in their favor and they did not meet that burden what was the time period in which the issuer did not have the authority to to make restricted sales um your honor it wasn't until i believe in the middle of october of that year of 2013 that the the shares that treaty was purporting to sell to these investors were actually issued by the state of nevada remind me of the time of the filing of the involuntary petition um so the involuntary petition was filed on may 7th of 2013 it was amended on may 9th two days later and then it was dismissed on june 12th so it was only pending for a very short five week period and i will remind the court as judge jolly pointed out um in his discussions with mr shaffer that there is also no competent evidence in the record of causation that the involuntary petition somehow caused this um this loss for two during the period of time that the involuntary petition was pending was the issuer authorized to make restricted sales no your honor they they they admit that in their how much how much ever thought what when if it's october then you you're talking about from october back to to the june 12th to june the 12th four months correct there were four months until the shares were initially actually issued your honor and they admit in their sec numerous sec filing which time the the the actual markets shares uh continued relative they continue to rise whether they were affected or not by the involuntary petition is that correct they may have been affected we don't know that it could have been higher but the fact what we do know is that they the market shares continued to rise through that whole period of october i mean june to october that's correct your honor however treaty did not put forth competent evidence of that well i understand but well the as i understood that david that there was evidence that throughout the period of time that the market shares were rising no i my suggestion was really favorable to you i think that the um as to what the market was actually doing correct your honor and that leads me to my next point that there's a there's a definite causation i'm a little puzzled about about why the the involuntary petition did not have the same effect upon a relative effect upon market shares that the restricted shares would be affected correct your honor um the way we see it is that the that the rise in the market price the market trading price indicated that as mr shaffer pointed out people didn't know about the investors didn't know about it leads to this other question i've puzzled about is that the claim is that that they anticipated and they hope to sell for that for that percentage of market price and my question is is um is they were able to do that before it seems odd to me that if they have this this correspondence between the market and the restricted shares and the the restricted shares move in a particular direction that that correspondence would necessarily be disrupted by the involuntary petition that have dissimilar impact i can see where an involuntary petition might knock both the market down and and and the corresponding one but the inability to track upward with the market shares i have a hard time following that and i don't know the explanation for that is neither do i your honor however we we feel that if anything that shows that there was no damage sustained by treaty and that there was no effect on the market price or more really that's irrelevant there was no effect no evidence you just said there was no evidence to show any reason why or why not the two different stocks would not be would not rise intent we don't know correct your honor but there was no disclosure was made about the involuntary petition that's a good point your honor um no disclosure was made in any sec filing following the filing of the involuntary petition to date there has been no disclosure chairs are they are they just are they disclosing to the buyer of the did the buyers of restricted shares know about the involuntary petition if the market may not know about it there's no competent evidence in the record that any of these investors that were listed in these alleged transactions knew anything about the filing of the involuntary petition and that's why they why treaty is not met it's burden of proof the only evidence is the affidavit that says that he received calls yes and he does not identify who those calls were from or what their concerns were other than they asked about the news correct your honor okay thank you mrs white thank you with regard to proof your honor uh the uh presiding judge at a motion for summary judgment does not determine the admissibility of proof if it had gone to trial let me also suggest and that's that's you do have an obligation under rule 56 to uh to respond with with with admissible evidence we responded with that affidavit of sean douglas let me say this to you i'm just reminding you that that is required yes they furnish no affidavit your honor with regard well all that they furnished was a statement of uncontested facts which apparently listening to counsel's argument it suggested that they the attorneys prepared this chart well wouldn't it be nice if the attorney in every case prepares a chart that's most favorable to him he's certainly not how can we even do that for years what always prepare the chart yeah the man who was in who was an employee of treaty who was in charge of investor relations and he is the one that that prepared the chart from the actual sales agreements that's that's that's the 2004 compilation and you you did you did it meet those requirements in other words you can you can take evidence that is admissible in form and summarize it and present it but there are rules that require that and in the sense that the underlying people gather the data but the lawyers uh but going to 50 article 56 yeah they provided no affidavits whatsoever this chart of this is self-serving nothing more than that so they have no evidence we counted it with it with the sworn affidavit with with regard to judge brown's ruling your honor he did not make all these these rulings that counsel suggested all he did is that met your burden no he didn't say that well it doesn't say what was just read i can read you no there was no order your honor i mean it was an order just just dismissing the involuntary but but but but all that judge brown did is on page 135 of the transcript i've read everything that's been filed i've listened intently to arguments and this presents some interesting questions but basically it boils down to me that the plaintiff does not have proof of a loss for a sale that didn't occur so what he's basing his whole decision on these were not sales and now there is the the the era of law right there which this court considers de novo there's your basis for rejecting the the here the granting of the motion for summary judgment in my in my brief i cite the long cases that that hold that that if if a document has three elements that the object the price and the consent that under louisiana law that's a sale so judge brown's order i mean his reasons that he gave orally are factually wrong this court in 1926 in in the uh i can't think of the case right now but but this was a fertilizer case and i feel like i was sometimes too but nevertheless this was this was a sale of fertilizer so they they they described the judge brown said there was no sale we say that there is a sale if there is in fact a sale then then there was an error of law by judge brown on which everything else flowed and and and uh i i don't want to go into anything else because in my brief i i on three pages i cite case law and louisiana civil code articles which dictate what is the sale and and these sale agreements these stock purchase agreements all had the same three elements thank you